We'll move to the fourth case of the day, Stephen West against Charter Communications and others. And we'll hear first from Mr. Cox. Your Honors, may it please the court, counsel, neither the 1938 nor the 1976 easements that issue here are grants to the public or utilities generally to access Mr. West's property. They are limited to a grant to LG&E or its predecessor for the transmission of electrical energy. In the 1990s, LG&E... Now, before you get too far in, I would like to talk to you about appellate jurisdiction for a moment. There does seem to be an efficiency to allowing Mr. West to conditionally dismiss his claims against LG&E in order to pave the way for this appeal and thereby expedite the resolution of the entire case. Is it your position that the only appropriate way to do this was by way of a Rule 54B certification by Judge Young, and that Mr. West and LG&E could not instead do this by way of agreement between themselves? Your Honor, it's our position on behalf of Mr. West that they could do this by agreement so long as the agreement was that if they were unsuccessful on appeal, there would be no further action between LG&E and Mr. West. Rule 54, after we looked at it, after the trial court suggested it when they didn't accept the stipulation of mootness, we were concerned that we potentially might not be able to meet the standard under 54. And so we chose this tact, which was pursued after we reached the agreement with LG&E, that any action would be dismissed against them and that it wouldn't be refiled if the appeal was unsuccessful. So if Mr. West agreed to strike the provision from the tolling and standstill agreement, allowing him to terminate the agreement, would your position as to jurisdiction be any different? It's always been our position, if you read the tolling agreement as a whole, that Mr. West does not have the ability to terminate the tolling agreement and file if he's unsuccessful on this appeal against LG&E. I hope that answers your question. It's complicated. The Kagan case, Your Honor, we believe is the case to look at in this regard. And in that decision, the Seventh Circuit Court of Appeals said, as long as the party explicitly agrees to treat the dismissal of the claim as having been with prejudice, in other words, the parties agree not to refile the claim in the district court in the event of an unsuccessful appeal, we found jurisdiction secure for the appeal to proceed. And that's the tact that we've pursued. That's the language. But the citations for that don't actually support that conclusion. They require just an unconditional dismissal with prejudice. And I do believe that that is partially correct. I don't believe that that case was considering a fact situation such as what – those cases were considering a fact situation such as what we have here. For example, Arrow, which is one of the cases that was cited, I believe, was a CERCLA case in which there were multiple defendants. And what the appellant was trying to do was just get rid of all the other claims they had in the case against the other defendants so that they could refile those win or lose on appeal after the appeal was disposed of and piecemeal the case, which is the point of these rules. This, on the other hand, is a situation where we're trying to avoid piecemealing the case because we would have had to go to trial against LG&E on something that both of us agreed by and large was disposed of by the court's ruling. The court disagreed, and that's why we handled it this way. I mean, as Insight argued, there seems to be some indication that Mr. West is preserving his right to go after LG&E regardless of the outcome of this appeal. And unless I missed it, there was no response in the reply brief to that point that was made by Insight. So it makes it look as if West, with LG&E's cooperation, is using an illusory dismissal of the claims against LG&E with no prejudice whatsoever to manufacture appellate jurisdiction. Do you understand where I'm coming from? I absolutely understand where you're coming from and the concern, and that's absolutely not what was done nor what was intended. What was intended, if you read the entire tolling agreement, was for only one situation to arise where Mr. West could continue his case against LG&E, and that would be if he was successful on this appeal. If he's unsuccessful on this appeal, this case is over. And that, if it wasn't spelled out clearly enough in the reply, it should have been spelled out more clearly. But the tolling agreement as a whole conveys that idea if you review it, and that's attached to our jurisdictional memorandum statement that was requested from this court prior to the briefing. What happens under the tolling agreement if we dismiss the appeal, this appeal, for lack of jurisdiction? It would go back, and we didn't address that issue, to be frank. It would go back and we'd determine that in front of the trial court. I think that LG&E in its statement, when it addressed and was ordered to do their jurisdictional statement, they were on the same page as us. Yeah. Okay. Is it correct that your side views Judge Young's two decisions with respect to the two groups of defendants as just inconsistent with each other? Correct. And you think LG&E agrees with you on that? Correct. And there's one little wrinkle. With one exception, the cases against the two defendants are the same. The only little wrinkle is we had a nuisance claim against LG&E because of a light on this tower. And when we spoke with LG&E after going through the case, we frankly agreed that we would drop that claim. Those are the lights needed for aircraft navigation? Correct. Correct. Hard to complain about that. You used to be down there, I think, and you've probably seen these lights on that. I'm sure I have. They're bright, but they're not the way they used to be, which was the reason for the nuisance claim. They used to be much dimmer. Okay. Although I'm not sure we want dimmer lights for aircraft. Well, and as I indicated. 250-foot towers. We were going to drop that claim. Okay. Can I ask you about your use of Rule 41? As I understand it, your theory is that after the dismissal of the claims against the Insight defendants, they are no longer a party to the litigation. That's correct, and that's the approach they took. They didn't participate in the status conference and refused to participate in discovery after. I understand why they might want to take that approach. But when we're talking about jurisdictional issues, let me just give you a different kind of hypothetical. Suppose you're in state court against both a diverse and a non-diverse defendant. Within a year, the district or the trial court dismisses claims against the non-diverse defendant. The diverse defendant then removes to federal court. Are you with me? Yes. Are you with me on the theory that we now have complete diversity because claims were dismissed against the non-diverse defendant? That doesn't work because the dismissed defendant is still a party to the litigation in that claims can be revived against them on appeal, right? Yes. So how is this different in terms of getting the consent of everybody to this dismissal? Well, this situation is different. Obviously, we're not talking about diversity, but the way we looked at it was, for example, when you have third-party claims and you're doing a Rule 41 dismissal, the courts have interpreted it to only require the consent to the parties to that claim. And so we started with the belief that, look, we've got a set of claims against one entity and a set of claims against the other entity in under 41. If it's a beef between the two of you and if one other party is already out of the case, that line, just like a third-party complaint, is gone. So you go down this line, which is the remaining party, and dismiss it that way, which is how we handled it, Your Honor. It's an interesting problem. For what it's worth, I don't think Rule 54b works here because the claims against the two sets of defendants are so intertwined. Did you all consider 1292b for interlocutory appeals on controlling questions of law? We did not. With the consent of the district judge? We did not. And in hindsight, perhaps we could have done it that way, but it was not something that we thought about. We considered this path and went down it after we saw the Kagan language and did it this way. On that issue, can you speak a little bit? If efficiency is the value here that is the lodestar, how much would it have taken to try the LG&E claims, notwithstanding where it was, instead of taking the appeal? Would it have been a three-week trial, or are we talking about a three-day court trial? It probably would have been closer to the three days. I would have said it would have been about a week, within a week. It would have been, frankly, there would have been a lot of motion practice. In addition, after these other rulings, there was another motion filed by LG&E after this. It would have been the third dispositive motion filed by LG&E. In the case that we would have had to have addressed, we were trying to get the trial, but this was guided with the mindset that we want to try this one time, and this issue really is overarching everything in the case, and that's why we came to this agreement with LG&E, this Cable Act. If the Cable Act says they have the right to do this, we don't want to pursue this claim. We think it's moot if it's upheld. And why do you need Insights Agreement as to the dismissal of the claims against LG&E? They'd already been dismissed from the case, had no stake, as you have argued, against LG&E. Under 41, we believe we needed Insights Agreement. The remaining parties in the case needed to stipulate to the dismissal, if that's what you're asking. You thought you did not need Insights Agreement. I'm sorry, LG&E. Why did we think we needed Insights Agreement? Yeah, because they were dismissed. Right, and that's my point, Your Honor. I didn't think we needed Insights Agreement because they were no longer a party. The only agreement we got was from LG&E, which was the stipulation of dismissal that was filed with the court after we reached the agreement set forth in the tolling agreement. All right. So if we come back to the Cable Act, I think if the court reviews the briefs, I know I'm running out of time, every single Circuit Court of Appeal that has addressed the Cable Act, the 3rd, the 4th, the 9th, the 10th, or the 8th, the 9th, and the 11th, has looked at this word dedicated. And they said, we're going to interpret the word dedicated in its legal slash technical way, which is the Black's Law Dictionary. It's not this ordinary, everyday usage. And they looked at the, each of these Circuit Courts of Appeal has looked at that technical language and done it that way because the United States Supreme Court has said that where Congress uses technical words, those words are to be construed by reference to the art or science involved. They've done it that way, and every one of them has construed the Cable Act in this narrow sense to where it can't be used to take private easements away from landowners for the benefit of the public. If you look at what the District Court did, they relied on two cases. One was a Michigan Court of Appeals case from the 19, I think it was 1990. And the premise upon which that case was based was that the majority rule was actually the opposite of what it is. Now, it was back in 1990 before the case law developed, but the premise of that case was that the ordinary, everyday usage of the word dedicated applied, not the technical meaning. So it got down on this path, and it really was the wrong path to go down in hindsight now that we see what all the Circuit Courts of Appeals have done, and obviously it's a Michigan State Court opinion, and I see my time is up. Okay, we'll give you a minute for rebuttal. Okay, thank you, Mr. Cox. For the defense, Mr. Werner. Good morning, Your Honors. May it please the Court. Paul Werner on behalf of the Insight Appellees, and I'd like to start, if I may, with the jurisdictional questions that the Court has raised. And the issue for us is that while we may be gone, we have not been forgotten in this litigation that is proceeding in the District Court. And our concern stems from both the Rule 41 issue, but also the side tolling agreement that purports to allow West and LG&E to regen up the litigation during the pendency of this appeal, and we wouldn't be allowed to participate in that. And our concern, of course, is that this isn't just a dispute between West and LG&E and Insight, it's a dispute also between LG&E and Insight over Insight's identification obligations that it owes to LG&E, which we would not be able to defend against if the litigation were to proceed in the District Court between LG&E and West without our participation while this appeal remained pending. I think, though, that in the reply brief, Judge Roedner, you asked earlier about whether West had addressed the issue that we had raised, and I believe that he did at page 4 and 5 of the reply brief, where he commits, unequivocally, not to refile claims against LG&E if his appeal in this court is unsuccessful. And I think that admission, under this court's authority, and Arrowgear and also Union Oil, is sufficient to give this court the kind of finality that is required by 1291 for this court to entertain this appeal and hear the merits and achieve the efficiency purposes that Your Honor had noted earlier would be possible if the court were to take this up and hear the merits. Now, we also heard from West Counsel on appeal that the purpose of that agreement was so that if his appeal is successful, the litigation can restart, but absent a successful appeal, the litigation in total will be final and conclusive, including as between LG&E and Insight, which satisfies our concerns. So you now think we do have jurisdiction? In light of the binding admission in the reply brief and also of counsel before you here today agreeing not to refile, essentially agreeing that the dismissal of LG&E is with prejudice. If I'm hearing that correctly, if I'm understanding that correctly, and I would encourage the court to follow up on rebuttal on this issue, but if that is the commitment, then that does give this court jurisdiction under 1291 to hear the merits of this appeal. Can you point to a case in which we have actually done that? Arrowgear, Your Honor, would be the case that I would point you to. Isn't the Kagan's representative... Which case did you say? I'm sorry. I just missed. Your Honor, I pointed the court to the decision in Arrowgear. Is the situation, though, in Kagan distinguishable? Because Kagan, there's actually use of the word with prejudice with regard to the interest. The tolling agreement here does not use the phrase with prejudice. Yes, Your Honor, that is distinguishable, and we argued that in our brief. But I think in the reply and what I have heard today is that counsel is willing to accept a dismissal of those claims with prejudice. And that admission is binding, and this court can rely on it to entertain the merits here. And I'd like to, if I may, if we're finished with the jurisdiction piece, I would like to turn to discussion of the merits. Arrowgear was a conditional dismissal with prejudice? Yes, Your Honor, and the court's concern in Arrowgear and Union Oil and also the Kagan case that Judge Brennan mentioned, the concern there is does the appellant have a right to a do-over? Can he or she initiate a start-over case? And as long as that concern is alleviated, even at oral argument, through a binding admission, then the court can accept that as a final judgment and move forward with the merits. And I think for the reasons that you heard from counsel and also from the bench today, there are important reasons of efficiency to hear the merits, especially where counsel has conceded that there's no intention to refile a claim against LG&E absent a successful appeal that would allow him to pursue claims against Insight in the same litigation. Turning to the merits, there was discussion of the 621 line of cases, and there are a scattering of appellate decisions out there that address 621, and we address those in our brief. Fundamentally, the question for the court is the scope of a cable operator's right under Section 621 of the Cable Act. The language of that section, of that provision itself, is very clear. A cable operator has a right to access public rights-of-way and easements dedicated to compatible purposes. There is no limitation on the types of easements that can be used outside of the public rights-of-way so long as the easements are compatible. There is really no question here that the easement involved in this case is fundamentally compatible with Insight's use of it for communications purposes. This easement is a recorded easement from a public utility to another public utility for the purpose of transmission, delivery, and use of electric energy by the public utility, other companies, its successors, and assigns, and other persons, all for the benefit of the public at large for heat, electricity, power, and telecommunications. That's the scope of the 1938 easement. That easement was not in any material way augmented by the 1978 supplement. In fact, the 1978 supplement reincorporates and re-bestows the same rights that were included in the 1938 easement. And the allegations of the complaint here are clear that our Insight's use of the easement is fundamentally compatible. In fact, easement's use is in a razor-thin fiber-optic wire at the very tip-top of a 250-foot steel transmission tower conducting high electric voltage between interstates, and the easement itself is 800 feet long and 100 feet wide and basically consumes the entirety of the property we're talking about in this case. Now, would I be simply wrong if I thought that the agreement was limited to the provision of electricity alone? It wasn't an easement for a broad array of utility providers, was it? I mean, it seems to me your brief ignores that limit. Well, Your Honor, we think that the easement is susceptible to that interpretation. But even if you were to limit it simply to electric utility purposes for the benefit of the public, that continues to be an easement that is compatible with Insight's communications use. And just factually on that point, one thing I want to emphasize is that the wire that Insight uses is a shielding grounding wire that has always been on that tower for electric utility purposes. It serves a purpose. Well, the agreement should set electricity and anything compatible with it. I mean, under the terms of the easement, it seems that Mr. West retains the right to exclude the public at large from the easement. Your Honor, that is exactly the right that was taken away from Mr. West with Section 621, which gives cable operators the right to use easements dedicated to compatible uses. In the legislative history of that act, Congress makes very clear that the easements that are to be covered by that provision are utility easements for electric power and communications. This is that very kind of easement, and there is no dispute that Insight is using it for a use that is compatible with LG&E's electric use. Yeah, but if we adopt your interpretation of the Cable Act and the particular easement at issue here, couldn't LG&E add wires for any number of cable operators and modify or expand the tower as necessary to support those additional wires? Well, Your Honor, there's one important distinction that needs to be made here. There is a difference between LG&E's use of the easement and Insight's use of the easement, and this gets back to your earlier question about whether the decisions are incompatible in the discussion of the easements. There is a difference between what LG&E can use the easement for and what Insight can use the easement for. So under Section 621, the right that is extended is for a cable operator to use compatible easements for communications purposes. What LG&E can do with the easement is subject to an interpretation of the easement itself. But I would point out, even under Indiana law, and we cite these cases in our brief, and I would point the Court to the Howard decision among others, the scope of an easement is guided by its purpose and the burden that would be imposed by an additional use. And even under Indiana law, an easement granted for one use can be properly extended to include other uses so long as they are consistent with the overriding purpose and don't impose any additional burden on the subservient estate. Thank you. Mr. Werner? Yes, Your Honor. I'm sorry. Judge Rogner, did you have a further question? No, I just want to say thank you. Okay. Mr. Werner, I'm sorry to take you back to appellate jurisdiction, but I've been taking a look at Arrow Gear and Union Oil here. Union Oil dismissed the appeal, and Arrow Gear extracted an unconditional commitment for dismissal with prejudice, as I read those. Your Honor, yes, you're right. I believe that there needs to be an unconditional dismissal. This is not unconditional. So the question is, again, have we actually done what you all want us to do, which is accept a conditional dismissal with prejudice as sufficient to establish finality? Your Honor, I believe that Arrow Gear is similar in that it is an unconditional waiver of the right to bring additional claims against the other defendants, and that's what I heard Wes say earlier. No, that's not what I heard. What I heard was it's lock solid if we affirm on the merits that there's no claim against LG&E, but it's not an unconditional dismissal with prejudice. And that's what I don't see in our case law. I see the phrase in the Minnesota life against Kagan case that suggests that it's possible. I don't see any evidence in our case law that it actually has been done. Your Honor, as far as I can point you to, Arrow Gear is the leading case that we rely on, and what would be analogous to the circumstance here. If it doesn't go as far as you believe is necessary, then we accept that, certainly. All right. Thank you. Returning to the 621 issue, Counsel for Wes indicated that a number of appellate courts have resolved these cases, and what I would like to emphasize to this Court, as we did in our brief, is the way that line of cases breaks down is pretty clear. The cases that involved multiple dwelling units went against the right of access under 621, and the basic rationale of those decisions is that cable operators cannot achieve through Section 621 a right that was denied to them when Congress refused to enact Section 633, and that's what the discussion of those cases is. 633 involved a grant of a right to a lessee or the owner of an individual unit to allow a cable operator to wire up the internal premises so that they could receive cable service. Congress decided not to enact that statute for reasons that that's best left to the market to determine, and those cases break down along that specific line where cable operators sought to do with Section 621. What they were denied the ability to do with Section 633, the courts refused them the right to wire up condominiums, apartments, and the like, but the cases that involve utility easements, like are at issue here, all go in favor of the cable operator. In fact, if you look at all of the decisions in total, they all understand that there is a clear difference under 621 between wiring up internal premises and access to easements that are used by other utilities. Even the 621 cases that rely on Congress's action not to implement Section 633 all recognize that 621 does, in fact, extend a right for a cable operator to use easements that are dedicated to compatible purposes, which I've already said is exactly the circumstance here. Mr. Werner, under your theory, how many cable systems could be granted access to this tower? There's no limit under the statute. The statute of Congress was very clear. A cable operator is granted a right to use compatible easements. That said, there generally is only one cable operator in any given area, so it is not a huge risk that other cable operators are going to come in, and certainly that hasn't been the case on the facts here. We have a tower that was installed in the 1930s, and there's one communications provider on it, and that's inside at the very top in a shield wire. I see my time is out, so if there are not further questions, we request the court to affirm the district court. Thank you. Thank you, counsel. How much time is left? Take one minute. Well, we went through all those the first time around, so take two. Oh, I apologize. Take two. Thank you, Your Honor. Thank you, Your Honor. Everything I heard from opposing counsel ignored the elephant in the room. It's dedicated, dedicated, dedicated, dedicated for compatible uses. The question in all these circuit courts of appeals has been, what does the word dedicated mean? And dedicated is the Black's Law Dictionary definition, not this general, oh, if you've got an easement on your property, you've somehow converted this into the right of insight to be able to use this easement. Five courts of appeals have looked at that issue, and every one of them have found that dedicated is this narrow interpretation. The striking of Section 633 from the Cable Act did not change anything in relation to the situation with Mr. West. All it did was made sure that everybody that's got an owner of a multi-unit apartment dwelling or a mobile home park stands in the same shoes as Mr. West. There has to be a dedication, and if you look at Black's Law Dictionary, it says that a dedication is the appropriation of land or an easement therein by the owner for the use of the public. And there's nothing to indicate in any of those easements that that is in fact the case. And in fact, the agreement between insight and LG&E says in it, which insight agreed to, that the easements are for the utility use of LG&E only. It doesn't say anything about the Cable Act. In fact, it says that LG&E would cooperate with insight in trying to get easements from the people across whom their electrical wires ran across. Do you want to address Mr. Werner's point here? He believes there's a change in position between what was below and what's here. Do you want to respond to that? Are you talking about the jurisdictional issue? Yes, please. Judge Hamilton, I absolutely agree with him, unfortunately, about what Arrow says. I think it was an unconditional dismissal in that case. I'm happy to hear that they'd like this to proceed to the merits, even though we are advocating for a conditional dismissal, to be clear, to where we could refile if we're successful on appeal. Absolutely not volunteering to give up those other claims against LG&E. Thank you, Mr. Cox. Thank you. Thanks to all counsel. The case is taken under advisement.